1

```
              IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF LOUISIANA
                    LAKE CHARLES DIVISION


UNITED STATES OF AMERICA        *   Docket No. 2:26-cr-68
                                *               2:26-cr-69
                                *
                                *
VERSUS                          *   February 19, 2026
                                *
                                *
                                *
CARTER MILES LEDOUX             *   Lake Charles, Louisiana

***************************************************************

        OFFICIAL TRANSCRIPT OF INITIAL APPEARANCE/
          ARRAIGNMENT/APPEAL OF DETENTION HEARING
      HELD BEFORE THE HONORABLE JAMES D. CAIN, JR.,
               UNITED STATES DISTRICT JUDGE

***************************************************************

                    A P P E A R A N C E S


FOR THE GOVERNMENT: THOMAS JOHNSON
                    U.S. Attorneys Office
                    800 Lafayette Street, Suite 2200
                    Lafayette, LA 70501



FOR THE DEFENDANT:  ADAM PATRICK JOHNSON
                    ANDREW THOMAS LEONARDS
                    Johnson Firm
                    1419 Ryan Street
                    Lake Charles, LA 70601



REPORTED BY:        DEIDRE D. JURANKA, CRR
                    USDC - Western District of LA
                    611 Broad Street
                    Lake Charles, LA 70601
```

Deidre D. Juranka, CRR
United States Court Reporter
Western District of Louisiana

**COURT PROCEEDINGS**

(Call to Order of the Court.)

THE COURT:  All right.  This is the United States versus Carter Miles Ledoux, Criminal Action 26-cr-68 and Criminal Action 26-cr-69.  If I could have counsel make their appearances, please.

MR. JOHNSON:  Good afternoon, Your Honor.  Thomas Johnson for the United States.  I'm joined at counsel table by Criminal Chief Allison Duncan and Special Agent Andrew Doxtator.

MR. JOHNSON:  Adam Johnson here on behalf of my client, Your Honor.  Mr. Andrew Leonards is also enrolled in the matter.

THE COURT:  Thank y'all.  We're going to do -- we've got two things.  I've got to take up the appeal from the magistrate on his detention; but also, we have a new Indictment.  So I'm going to go ahead and handle his initial appearance, we'll do that first, and arraignment and then we'll just go into the next.

All right.  So if I could, hey, Patrice, why don't you swear the defendant in, please.

(Oath is administered.)

THE COURT:  You can be seated.  Can I go ahead and get you to give me your name for the record, your complete name.

Deidre D. Juranka, CRR
United States Court Reporter
Western District of Louisiana

THE DEFENDANT:  Carter Miles Ledoux.

THE COURT:  Okay.  Thank you.  All right. Mr. Ledoux, you were before the Court previously, the magistrate, having been arrested on a Complaint filed by the FBI.  And today you're here for an initial appearance and arraignment because you've been indicted by a Grand Jury sitting in the Western District of Louisiana.

In Case No. 26-cr-68, you are charged with Count 1, 18 U.S.C. Section 371, conspiracy to commit offenses against the United States; Count 2, 18 U.S.C. Section 2261A(2)(B), cyber stalking; Count 3, 18 U.S.C. 875(c), transmitting threats through interstate commerce; Count 4, 18 U.S.C. Section 844(e), threat to damage or destroy by means of explosive.

Also, in Case No. 26-cr-69, you are charged in Count 1, 18 U.S.C. Section 2252A(5)(B), possession of child pornography.

Mr. Ledoux, are you the defendant being charged in the Indictment, yes or no?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  I'm going to briefly go over the penalties for these crimes as follows.

In Case No. 26-cr-68, as to Count 1, an imprisonment term of not more than five years, a fine of

up to $250,000, supervised release, a term not to exceed three years, and a special assessment of $100. As to Count 2, an imprisonment term of not more than five years, a fine of up to $250,000, supervised release term not to exceed three years, and a special assessment of $100. As to Count 3, an imprisonment term of not more than five years, a fine of $250,000, a term of supervised release not to exceed three years, and special assessment of $100. As to Count 4, an imprisonment term of not more than 10 years, fine up to $250,000 a term of supervised release not to exceed three years, and a special assessment of $100.

In Case 26-cr-69, as to Count 1, an imprisonment -- term of imprisonment not more than 20 years, a fine of up to $250,000, a term of supervised release not to exceed three years, a special assessment of $100.

Mr. Ledoux, you have the right to be represented by an attorney throughout these proceedings. If you cannot afford an attorney, one will be appointed for you. I see that you do have counsel with you, Mr. Johnson. It's my understanding that you have retained him and Mr. Leonards as your counsel. Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Let me explain to you some rights as has been explained to you previously by the

Court.

You have the right to remain silent.  You have no obligation to speak with any representative of the Government about the charges against you; and if you have spoken with them already, that does not mean you need to speak to them again.  If you choose to speak with them, you have the right to terminate the interview at any time.  Do you understand the right to remain silent, Mr. Ledoux?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now that I've explained these rights to you, any statements you do make can be used against you. Do you understand this, Mr. Ledoux?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  You're entitled to have the Indictment read -- the Indictment -- counts of the Indictment read to you.  Would you like a formal reading of the Indictment or do you waive the formal reading?

MR. JOHNSON:  We'll waive formal reading.

THE COURT:  Okay.  Thank you, Mr. Johnson. Mr. Johnson, have you had an opportunity to review the Indictment against Mr. Ledoux?

MR. JOHNSON:  I have.

THE COURT:  Mr. Ledoux, do you understand the nature of the charges contained in the Indictment and

the maximum penalties of the charges?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  As in Case No. 26-cr-68, Mr. Ledoux, as to Counts 1 through 4, how do you plead to those counts, guilty or not guilty?

THE DEFENDANT:  Not guilty.

THE COURT:  Okay.  In Case No. 26-cr-69, as to Count 1, how do you plead, guilty or not guilty?

THE DEFENDANT:  Not guilty.

THE COURT:  Okay.  I will order -- since you've entered a plea of not guilty, there will be a need for a pretrial criminal scheduling conference.  There will be a scheduling conference set for March 16th, 2026 at 3:30 before the magistrate judge.  Okay.  All good with everybody?

MR. JOHNSON:  Yes, Your Honor.

THE COURT:  You sure?  Good with Government?

MR. JOHNSON:  Yes, Your Honor.

THE COURT:  All right.  Now, it's my understanding that there's an appeal of the magistrate judge's decision as to detention, and I believe we're going to move into that now; is that correct?

MR. JOHNSON:  Yes, Your Honor.  Now that the Indictment --

THE COURT:  Hold on one second.  Go ahead, sir.

I'm sorry.

MR. JOHNSON:  Your Honor, this matter is still technically still under seal.  At this time the Government would move to unseal the case except as to two items, the first being the Complaint and associated affidavit and the second would be the detention hearing itself.  And the reason we would like to keep those two things -- or the transcript in proceedings of the former detention hearing.

THE COURT:  You want to keep the transcript of the detention hearing last week under seal?

MR. JOHNSON:  Yes, Your Honor.  And the reason is victim PII.  The victims were referred to by their initials.  And after some consultation with our supervisors, we'll be moving forward referring that to --

THE COURT:  And you want the Complaint kept under seal as well?

MR. JOHNSON:  Yes, Your Honor.

THE COURT:  What's your position?  Any objection?

MR. JOHNSON:  I don't think I have an objection, Your Honor.

THE COURT:  All right.  Those two items will remain under seal.

We're going to have -- I've reviewed that

transcript in detail.  It's quite long.  So we're going to have the -- I don't think we need a new detention hearing because of the new Indictment.  We're just going to continue on, but I'm going to have arguments here on the appeal of the magistrate's ruling in that case. Here's the ground rules for this from my perspective.

I've read the transcript of that detention hearing, okay, so I understand the evidence that was presented to the magistrate.  What I really am interested in now, since we do have a new Indictment, new things to consider in addition to that transcript, I will allow -- if you have any additional information you want to present to me, I will allow y'all to present it to me. But I don't really need to go back over everything that was presented to the magistrate.  I've read all that. That's in the record.

MR. JOHNSON:  Understood, Your Honor.

THE COURT:  Everybody on the same page?  Okay. Well, since this is your appeal, you get to go first.

MR. JOHNSON:  May I approach?

THE COURT:  Yeah.  Sure.  You can do it at the table, approach.  It doesn't matter to me.  Wherever you're most comfortable.

MR. JOHNSON:  Your Honor, I did want to put up one exhibit on ELMO.

THE COURT:  Yeah, that's fine.  Listen, I'm assuming you don't want this hearing under seal, right?

MR. JOHNSON:  This one should be all right, Your Honor, as long as no one refers to the victims by their initials.

THE COURT:  All right.  Mr. Johnson, Mr. Leonards, just refrain from referring to the victim by her initials.

MR. JOHNSON:  I don't even know who it is.

THE COURT:  Yeah.  I guess we all know the initials.  I guess they're just saying let's not use the initials.

MR. JOHNSON:  Yes, sir.

THE COURT:  Go ahead, sir.

MR. JOHNSON:  Thank you, Your Honor.  So this is a de novo review under 3145.  As Your Honor pointed out, you can consider new evidence.  This is a clean slate operating off of the previous testimony that was heard before the magistrate.

In terms of new evidence, the Indictment is the most important thing here.  There are several new charges including a fully pleaded domestic terror conspiracy and a CSAM charge.  There are new statutory maximums that Your Honor may and should consider.  844(e) carries a 10-year statutory maximum and the 2252A

charge has a 20-year statutory maximum because it involves prepubescent children.  These are relevant to risk of flight and insofar as Congress has created higher maximums that suggest that there's greater community danger that Your Honor should consider.

I'm not going to rehash the evidence or the prior arguments; but in terms of the 3142(g) factors, you know, within each of these four subsets, the magistrate found that the first two point towards detention.  I would argue that when Your Honor considers that testimony it's not just the first two point towards detention, it's that they heavily point towards detention.  The nature and circumstances of the offense involve a racial terror conspiracy against a juvenile. The weight of the evidence is overwhelming.  The defendant has confessed, and the IP addresses associated with many of these threatening contacts point to his home.

Prong -- or the factor -- the third and fourth factors under 3142(g), that is where I think that the argument lies.  And here, I would say the defendant's character is really what stands out under the third factor.  He has an unhealthy obsession with racial violence, mass murder, extortion, and child pornography. This greatly outweighs family ties, community ties, to

the extent that they exist.  And then regarding his danger to the community, the evidence shows that he has glorified Dylann Roof.  Dylann Roof is a convicted mass murderer who is presently sitting on death row.  It is hard to imagine stronger evidence that points towards a danger to the community than that.

In terms of new arguments, one thing that I wanted to suggest to Your Honor is Probation and their take on this.  Before we came to the detention hearing, Probation recommended -- found that there was no combination of conditions that could safely justify release.  That is a big deal because Probation made that finding before the detention hearing and all of these exhibits showing videos of racial violence, glorification of mass murder, CSAM.  When you consider that they made their assessment and found that there was no combination of conditions before they knew that he had these impulses, it tends to show that their perspective, their assessment of these kinds of situations, if it was close before, it was nowhere near close after the detention hearing itself.

And I would also point out, this did not come up, but insofar as conditions are being devised, the defendant's parents were there and they heard the magistrate lay out here are the conditions that you'll

Deidre D. Juranka, CRR
United States Court Reporter
Western District of Louisiana

be living under.  The defendant has a little brother and that little brother presumably has devices of his own. And I don't know if Your Honor had siblings; but when I was younger, me and my brother, we were thick as thieves.  And it's hard to imagine a minor little brother being able to live up to conditions, keeping his older brother away from the phone if his older brother should ask.

And then, Your Honor, of the exhibits that came in, this one I think stands out most.  So this is Government's 13, and Special Agent Doxtator testified regarding this.  Your Honor, this is the first, second screenshot of a video showing a black man's head being blown off with a shotgun.  There were several variations of this video found on the defendant's phone, and this video is consistent with over a hundred other videos glorifying racial violence and mass murder.  I would suggest that when Your Honor considers the danger to the community that you think about this exhibit in particular and you think about the fact that it is representative of hundreds of other videos that the defendant has consumed, downloaded onto his phone, much less the ones that he has streamed and not downloaded onto his phone itself.

We'd rely on the other arguments presented at the

prior detention hearing.  No further argument from the Government unless you have particular questions.

THE COURT:  No, no.  We've looked at a lot of videos.  They were very disturbing.  I don't think we looked at this one, though; but we did see some others.

Mr. Johnson, Mr. Leonards, whoever would like to address the Court.

MR. JOHNSON:  I don't think there's anything new been added to the question except maybe the findings from the probation officer.  The judge had that information.  I challenge anybody to find a better, more articulate, thorough ruling walking through each of the individual findings from a court, period.  However the magistrate is selected, however that process was done, it was clearly done extremely well because the judge walked through each of the factors specifically, weighed the evidence.

And in response to the Government's argument that character trumps everything.  Because that's the truth, we can all give our cell phones to Big Brother and then that's how our character's judged.  I hope not because everybody's got stupid stuff on their phone.  What the evidence showed is that those pictures, those videos, they were without context completely, not what was said before, what was said before, whether or not these were

actually saved, whether they're from a cache of files, whether or not he viewed them, just scrolled them, or whether he actually downloaded them onto the phone.

My client never glorified Dylann Roof.  They couldn't provide any context to that whatsoever. There's just evidence of a possible video on his phone. We don't know how it got there, and they can't explain how it got there.  He didn't glorify Dylann Roof.  They didn't say he shared that photo, shared that video, none of that.

Now his little brother is a danger to society, I guess, because of his association with his older brother.  There couldn't have been any better testimony from my client's mother that said she'd have no problem calling the police.  She looked the judge right in the face.  That's all exhibited in the record.

What they're trying to do is keep a 19-year-old boy in jail pending trial as leverage.  I asked the FBI agent on the witness stand:  You want him to cooperate so you are using this as leverage?  After a couple of objections, we finally got the answer:  Yes, that's one of the reasons we are seeking detainment.

We had eight months of time.  My client's arrested. He posts bond on a $30,000 bond in St. Tammany Parish. He goes to every single court date.  He doesn't get in

any trouble whatsoever.  He shows up and surrenders himself.  His mom drives three and a half hours back and forth to St. Tammany.  They go to all the court dates.  Nothing happens for eight months.  But suddenly now, because it's the Federal Government, oh, they're a danger to society.  Thank God we got past those eighths months. I refuse to live that scared.

And there's no reason in this case to take a 19-year-old's phone and say, oh, we've got tremendous -- this is -- he's not a threat to society.  He's been out for eight months.  We have a body of work to look at. We have his mom.  We put on evidence he's been diagnosed with a mental defect.  His mom has the perfect job.  She stays home, she works from home and can watch him.

And we have a judge who considered all this evidence and gave one of the most articulate rulings I've ever seen in a case on Your Honor's behalf.  I think it should be upheld without question because there's no new evidence.  He's 19 years old.  They have evidence that he sent a text message.  That's it.  The evidence doesn't show that he actually called the police.  He sent a text message and he has some bad videos on his phone.  That now, a bad text message and some bad videos on a phone, that now keeps you in custody even though you have eight months that you

complied, cooperated?

He even talked to the police with St. Tammany. I've told them he's going to cooperate, probably. We're not fighting. This is a unique case in the sense that he was out for eight months. We know how he acts. We know the job that his mom can do. There's no reason for this young man, who I would remind the Court the law still protects from the purchase of a pack of cigarettes, to be held in prison given Judge LeBlanc's very thorough, articulate ruling that I think should be upheld for the same reason. Thank you, Judge.

THE COURT: Okay. Anything else?

MR. JOHNSON: Nothing from the Government, Your Honor.

THE COURT: I've reviewed the record. I've reviewed the magistrate's ruling. I've looked at all of the evidence. By the way, thank you. I got a -- so I'm clear on the record, I got a brief from defense counsel. Thank you for the brief, it was well-written, I appreciate that, on the revocation release order. However, after a de novo review of the record and considering all the relevant factors set forth in 18 U.S.C. Section 3142(f), I find that the Government has carried its burden showing the defendant poses a serious danger to others in the community and no combination of

conditions would reasonably mitigate those risks.

The videos show graphic violence with a proclivity for child pornography, this along while living with his parents, who I understand what you're saying, but he's living with his parents and y'all are articulating to this Court that he has some type of illness but yet his phone was allowed to have this type of stuff on it.  I don't have faith in the supervision of the third-party custodian of the parents at this point based upon what is on that phone and how long it's been on that phone.

Furthermore, he's admitted to a -- he admitted to a dedicated extortion online three or four times.  He's involved in sophisticated tools to hide his identity from others.  He has -- I think all of those things, based upon my review of the record and those factors that are contained in 3142, I overturn the magistrate's ruling and the defendant will be detained pending trial.

Anything else?

MR. JOHNSON:  Nothing from the Government, Your Honor.

MR. JOHNSON:  Discovery as soon as possible in the case.

THE COURT:  Yes.  Y'all be sure to turn over any Brady material, anything of that nature.  I don't know if we're there yet.  Are y'all going to try to invoke

your right to a speedy trial?  I mean, I could deem this case complex, so.  It's pretty complex.

MR. JOHNSON:  I don't know what we're going to do, Your Honor.  I just want discovery as soon as possible because I don't have any of it.  I keep hearing allegations --

THE COURT:  Get that discovery pretty quick.  Okay. Well, y'all know when the scheduling conference is with the magistrate, so we'll go from there.  Okay.  All right.  We're adjourned.  Thank y'all.

(Proceedings adjourned for the day.)


*  *  *  *  *  *


**CERTIFICATE**


I hereby certify this 26th day of February, 2026 that the foregoing is, to the best of my ability and understanding, a true and correct transcript of the proceedings in the above-entitled matter.


*Deidre D. Juranka*
Deidre D. Juranka, CRR
Official Court Reporter


Deidre D. Juranka, CRR
United States Court Reporter
Western District of Louisiana